### THE SENECA.

(Circuit Court of Appeals, Third Circuit. May 17, 1916.)

No. 2089.

SHIPPING ☞168—OFFENSES AGAINST NAVIGATION LAWS—CARRYING EXCESS OF PASSENGERS.

Evidence held insufficient to sustain a libel by the United States against a steamer, under Rev. St. § 4499 (Comp. St. 1913, § 8275), to recover the penalty for carrying more passengers than allowed by the vessel's inspection certificate.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 556–562; Dec. Dig. ☞168.]

Appeal from the District Court of the United States for the District of New Jersey; John Rellstab, Judge.

Suit in admiralty by the United States against the steamer Seneca, Michael Blasins, claimant. Decree for respondent, and libelant appeals. Affirmed.

---

J. Warren Davis, U. S. Atty., of Trenton, N. J., and Charles F. Lynch, Asst. U. S. Atty., of Paterson, N. J.

Alexander & Ash, of New York City, for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below the United States filed a libel against the steamer Seneca to recover a penalty of $500 for carrying more passengers than allowed by the vessel's inspection certificate, in violation of section 4499, Revised Statutes. The case was heard on final proofs, and resulted in a decree dismissing the libel. Thereupon the government appealed.

The appeal raises no question on principles of law, and involved a simple issue of fact, namely, whether the government had, by the weight of the evidence, sustained the burden of proving the Seneca had carried an excess of passengers. That issue the court below, in the opinion quoted, in the margin,[1] determined against the govern-

[1] "The libel charges that the steamer Seneca carried 27 more passengers than she was permitted to by her certificate of inspection. This steamer ran between Hoboken, N. J., and different fishing banks, stopping at the Battery, New York City, to receive and discharge passengers. On the day in question there were undoubtedly more persons on board than were permitted by the certificate of inspection. The questions as to such persons are, how many, and were they passengers within the meaning of section 4499, R. S.?

"The method employed by the respondent in ascertaining the number of passengers carried was that of selling and collecting tickets, no one being allowed to go on board unless he had a ticket, and the testimony on the respondent's behalf is that on the day in question but 72 (the authorized number) tickets were sold; that no person without a ticket was knowingly allowed to go on the boat; that after the boat had left the New York stopping place a passenger made it known that several persons, estimated at from 6 to 9 in number, had jumped over the steamer's rail while she was at such landing place, and while passengers were coming on board over the gangplank; that these came on the boat without the knowledge or permission of the respondent: that they could not be identified; and that they obtained their passage without pay. The persons thus surreptitiously obtaining place on the steamer, in the circumstances, were trespassers, and, if the number of these accounts for the excess number of persons carried on that day, no case, in my judgment, has been brought within the meaning of that section. The City of Lowell, 204 Fed. 271, 122 C. C. A. 395; The Melville, 213 Fed. 620, 130 C. C. A. 212, and cases cited.

"Were there others in excess of the permitted number? A suit of this character—to recover a penalty—while classified as civil, is quasi criminal in character (The Pope Catlin [D. C.] 31 Fed. 408–409), and a recovery in such a case must be supported by convincing testimony. The case for the prosecution depends mainly upon the accuracy with which the *counting machine* used on the day in question registered the number of persons as they left the boat, on its return trip, at the New York landing, and whether the count made by one of the inspectors of the persons remaining on the boat at that time did not include some members of the crew. The accuracy of the machine's count was put in question by the respondent, who supported its contention by persuasive evidence tending to discredit said count. In such circumstances, the prosecution was called upon to corroborate the accuracy of this count by evidence showing the make and reputation of machines such *as the one used*, or *how that one worked* immediately preceding or succeeding the use in question, or *whether its registering mechanism had ever been tested as to accuracy.* In the absence of such or other corroborating testimony, the doubt cast upon the accuracy of the count is too weighty to permit a judgment for such penalty.

"The respondent is entitled to a decree dismissing the libel."

ment. After full argument in this court, and a subsequent examination of the testimony by the judges comprising this court, we see no reason to differ from the conclusions reached by Judge Rellstab.

The decree below is therefore affirmed.